**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

UNITED STATES OF AMERICA,

v.

KEVIN HARTLEROAD

CAUSE NO.: 1:21-CR-16-HAB-SLC
1:24-CV-100-HAB

## OPINION AND ORDER

Defendant Kevin Hartleroad ("Hartleroad") is serving a 180-month prison sentence after a jury found him guilty of attempting to sexually exploit a child in violation of 18 U.S.C. § 2251(a) and (e). After pursuing an unsuccessful appeal, Hartleroad now moves to vacate his sentence under 28 U.S.C. § 2255. (ECF Nos. 99, 113[1]). The Government has responded to his motion (ECF Nos. 109, 116), and Hartleroad has replied (ECF No. 118). Because the Court finds that Hartleroad received the quality of representation guaranteed by the Constitution, his motion will be denied.

## I. BACKGROUND

The parties, this Court, and the Seventh Circuit are all well-versed in the facts underlying this case. For simplicity, the Court adopts the factual record the Seventh Circuit identified in Hartleroad's appeal and includes that record below:

> Kevin Hartleroad contacted the author of an online post soliciting persons interested in participating in sexual conduct with minors. That post expressly excluded those interested in "role play" or "fantasy." The author claimed to be a stepfather who was engaged in sexual relations with his fourteen-year-old daughter, but he was actually undercover FBI Task Force Officer Christopher McCarty.

---

[1] On June 3, 2024, Hartleroad moved to amend his § 2255 motion to add an ineffective assistance of counsel claim relating to a continuance that he believes violated his speedy trial rights. (ECF No. 113). The Government responded to Hartleroad's additional claim on July 5, 2024. (ECF No. 116).

The two began exchanging messages and McCarty learned that Hartleroad was interested in having sex with the fictitious minor. Hartleroad told McCarty that such occasions were "hard to find [for] real." They discussed setting up a Skype call before planning to meet in person, when Hartleroad would engage in sexual conduct with the minor.

Due to the pandemic, Hartleroad initially agreed to limit the interaction to the Skype meeting, during which Hartleroad would view McCarty engaging in sexual conduct with the minor. McCarty suggested that Hartleroad direct the sexual conduct to be depicted during that meeting. Hartleroad expressed no hesitancy with this idea. He responded it "sounds incredible" and "I love the idea of telling you two what to do." He also sent McCarty a photograph of the child on which he had ejaculated, addressing it to the child and telling McCarty the photo was "for [him] to show her." During a break in the conversation, Hartleroad reinitiated contact and expressed his desire to speak over Skype and "direct." In later messages, McCarty told him the interaction generally "works best" when "whoever we are Skyping with makes a list of what they want to see." Hartleroad said this suggestion sounded like an "excellent idea" to him and asked if he should "come up with a script." Hartleroad then drafted a script of sexual conduct he expected to be depicted by the minor and McCarty and sent it to McCarty. He expressed to McCarty his hope that the child had liked the script.

The two continued to discuss setting a time for the Skype meeting, with Hartleroad offering to join the call during work hours. At one point Hartleroad thanked McCarty for "bearing with" him as he determined whether his service would be good enough to Skype from work using his phone, insisting the three "will m[ak]e this happen." They eventually agreed on a date and before the meeting took place, McCarty asked Hartleroad if he was "sure [he] want[ed] to do this" given that the fictitious minor was "under age." Hartleroad responded, "It's cool. I'm ready[,]" and he joined the Skype call. But McCarty ended the call early by claiming his wife had come home. McCarty testified at trial that Hartleroad sent him "a message on Skype that said that [Hartleroad was] glad it didn't happen."

McCarty later posted similar messages about the fictitious stepdaughter on multiple online platforms. In response to these new posts, Hartleroad reinitiated contact with McCarty and admitted he "knew she was" a minor and he "spooked," but he was "glad to find [McCarty] again." When McCarty suggested they arrange another virtual meeting, Hartleroad said he "would still love to do Skype with the two of you and direct."

As described above, a grand jury indicted Hartleroad with a single count of attempting to sexually exploit a child in violation of 18 U.S.C. § 2251(a) and (e). He pleaded not guilty, and the case went to trial. The government presented evidence, including McCarty's testimony, and rested. Hartleroad moved for judgment of acquittal, which the district court took under advisement. Hartleroad also testified and renewed his acquittal motion at the close of evidence.

The district court and counsel discussed the jury instructions on more than one occasion. Revisions were proposed and statements were made as to whether those changes conformed to the statute and the indictment, but the language of the final jury instructions and the indictment ultimately differed. Hartleroad was

> indicted for attempting to employ, use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of *producing* a visual depiction, or a live visual depiction, of such conduct. The jury received a similar instruction but was told Hartleroad must have acted for the purpose of *transmitting* a live visual depiction of such conduct. The jury returned a guilty verdict, and the court denied Hartleroad's motion for judgment of acquittal.

*United States v. Hartleroad*, 73 F.4th 493, 495–96 (7th Cir. 2023).

On appeal, Hartleroad contested the sufficiency of the evidence sustaining his conviction, that the jury instructions constructively amended the indictment, and that the indictment charged conduct not prohibited under 18 U.S.C. § 2251(a). The Seventh Circuit disagreed with Hartleroad on all fronts and affirmed his conviction. *Id.*

## II. LEGAL STANDARD

Relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). To succeed on a motion under § 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence exceeded the maximum authorized by law or is otherwise subject to collateral attack. *Id.* A § 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal." *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992). Thus, a § 2255 motion cannot raise:

> (1) issues that were raised on direct appeal, absent a showing of changed circumstances;
> (2) nonconstitutional issues that could have been but were not raised on direct appeal; and
> (3) constitutional issues that were not raised on direct appeal.

*Id.* A § 2255 movant can overcome procedural default in one of two ways: by showing "cause" for the default and "actual prejudice" from failing to raise errors on direct appeal, or by demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008).

Hartleroad's arguments are all presented as claims for ineffective assistance of counsel ("IAC"), to which the general procedural default rules do not apply. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Such claims may be brought through a § 2255 motion even if not pursued on direct appeal. *Id.*

To prevail on an IAC claim, a defendant must show that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced his defense that it deprived him of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 688–94 (1984). When analyzing under the performance prong, courts apply a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689). "In other words, a counsel's representation need not be perfect, indeed not even very good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (internal quotation and citation removed). Likewise, claims that an attorney was ineffective necessarily involve inquiries into an attorney's trial strategies. These trial determinations, like so many "other decisions that an attorney must make in the course of representation[, are] a matter of professional judgment." *United States v. Berkowitz*, 927 F.2d 1376, 1382 (7th Cir. 1991). To resist the natural temptation to play "[m]onday morning quarterback," *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990), the Court "must defer to any strategic decision the lawyer made that falls within the wide range of reasonable professional assistance, even if that strategy was ultimately unsuccessful." *Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013).

Should the petitioner satisfy the performance prong, he must then fulfill the prejudice prong by demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Starnes*, 14 F.3d

1207, 1209–10 (7th Cir. 1994). "In making the determination whether the specified errors resulted in the required prejudice, a court should presume . . . that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694. Even though isolated errors can sometimes be considered ineffective assistance, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Karr v. Sevier*, 29 F.4th 873, 880 (7th Cir. 2022). And mere "[f]ailure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996). Ultimately, "[i]t is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Harrington*, 562 U.S. at 104 (internal quotation and citation omitted). That is, those errors must render the proceeding "fundamentally unfair or unreliable." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013).

## III. ANALYSIS

Hartleroad complains of a host of ways he believes his retained trial counsel, George Cosenza, was ineffective. For ease of analysis, the Court groups Hartleroad's grievances into four categories of allegations: (a) Cosenza's failure to challenge the "procedural errors" related to Hartleroad's arrest; (b) Cosenza's insufficient communication and consultation with Hartleroad; (c) Cosenza's allegedly deficient preparation for trial; and (d) Cosenza's ineffective conduct and decision making at trial.

### a. "Procedural Errors" Related to Hartleroad's Arrest

Hartleroad contends that there were procedural errors associated with his arrest: the "failure of the arresting officer to produce a warrant or inform [him] of the charges [he] was being arrested for" (ECF No. 99 at 5)—and that his attorney was ineffective for failing to bring that issue up to

the magistrate judge. He believes that his arrest was in violation of Federal Rule of Criminal Procedure 4(c)(3)(A), and that by failing to bring the errors to the magistrate judge's attention at his arraignment, "[a]ll further proceedings were prejudiced by the Court's lack of being informed" because "[t]he Court can not address or rectify a situation about the nature of [his] arrest that it is not made aware of." (*Id.* at 6).

In response, the Government contends that this claim is procedurally defaulted for failure to raise the issue on direct appeal. And even if it were not procedurally defaulted, Hartleroad has failed to indicate how he was prejudiced by the failure to bring the supposed errors to the magistrate's attention.

If a § 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, or that enforcing the procedural default would lead to a fundamental miscarriage of justice. *Lund v. United States,* 913 F.3d 665, 667 (7th Cir. 2019); *Farmer v. United States*, 867 F.3d 837, 842 (7th Cir. 2017). On direct appeal, Hartleroad challenged only the sufficiency of the evidence, whether the jury instructions constructively amended the indictment, and whether the indictment charged conduct not prohibited under the statute. *See Hartleroad*, 73 F.4th at 495. The Court agrees that Hartleroad's claim here stinks of procedural default, given that any potential procedural errors with his arrest were certainly something that could and should have been raised on direct appeal. In any event, he has wrapped that claim in the guise of ineffective assistance of counsel. *See Franklin v. Gilmore*, 188 F.3d 877, 883 (7th Cir. 1999) ("[A]ttorney error that constitutes ineffective assistance of counsel is cause to set aside a procedural default.").

But even clearing that hurdle, his claim is still deficient. Hartleroad neglects to indicate how he was prejudiced by Consenza's failure to bring any procedural errors to the Court's attention. Assuming that his argument for ineffective assistance is based on Consenza's failure to present some kind of motion to suppress, Hartleroad would still need to prove that such a motion was meritorious. *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). Here, he has presented no legal argument as to what relief he believes he was denied based on his attorney's alleged neglect, nor has he given any indication that any meritorious argument would exist.[2]

Simply put, Consenza cannot be ineffective for failing to submit unidentified and potentially frivolous motions.

**b. Communication and Consultation**

Hartleroad asserts a number of problems he encountered with Cosenza's method and manner of communicating before the trial, specifically that Cosenza "did not keep [him] abreast of the developments of the case, the various orders and motions" and that he "took no time to talk to [Hartleroad] about developing a reasonable defense." (ECF No. 99 at 30). In his petition and Reply, Hartleroad lists in detail each interaction he had with Cosenza starting from the day of his arraignment. These include discussions of potential defense theories and Hartleroad's preferred defense that included calling the woman posing as "Candace" as a witness and otherwise openly admitting to his diagnosed sex addiction (both ideas that Cosenza supposedly shot down). Hartleroad complains that he only discovered the existence of some pretrial motions upon the first

[2] As the Government correctly points out, no court has held that a violation of Rule 4(c)(3)(A) could result in the dismissal of charges. And to the extent that a remedy such as exclusion of certain evidence might be proper in the fact of a violation, "no court has held that a violation of Rule 4(c)(3)(A) warrants application of the exclusionary rule." *United States v. Rodriguez-Arvizu*, 2022 WL 1164880, at *3 (D. Ariz. April 20, 2022).

day of trial, and he further complains that of the 209.3 hours Cosenza billed in this case, only 4 of those were spent meeting with Hartleroad.

The Government points out that Hartleroad's own factual assertions in his petition belie claims that Cosenza was deficient in his pretrial communications. Indeed, his petition includes mentions of multiple discussions the two had about various ways to defend against the charges. The Government also included an affidavit from Cosenza in which he attests to these discussions, including the reasons he believed Hartleroad's preferred defense strategies would not work. Instead, their legal strategy was: "to show that Mr. Hartleroad never believed Candace was a minor and that the sexual discussions between him and the undercover officer was role play and not done for the purpose of engaging in any sexually explicit conduct." (ECF No. 111 at 2). Cosenza believed the issues in the case "were not complicated." (*Id.* at 3). Beyond providing all discovery documents to Hartleroad so their case files were "identical," Cosenza attests he met with Hartleroad on eight occasions before trial.[3] (*Id.* at 3).

Hartleroad's complaints fail on both *Strickland* prongs. Neither his own factual allegations nor the affidavit establish Cosenza's communication in this case was professionally unreasonable or that he was prejudiced by any lack of communication. Indeed, the record reflects that the two discussed *on multiple occasions* the potential strategies that both Cosenza and Hartleroad wanted to pursue. That those conversations did not cause Cosenza to use Hartleroad's preferred strategies at trial does not render his counsel constitutionally deficient. Further, that Cosenza spent only four hours meeting with Hartleroad about a case with "not complicated" issues does not on its own

---

[3] Hartleroad insists that he and Cosenza did not meet on July 6, 2021, because of an alleged "lock down" at the Allen County Jail, and he claims that an evidentiary hearing and discovery of the jail's visitor logs from that day would show the jail was not locked down. (ECF No. 118 at 13). But even if the Court took Hartleroad at his word that the two did not meet on that one day, the analysis would not change because he has failed to show that his other communications with Cosenza were constitutionally deficient.

overcome the considerable deference afforded to Cosenza's trial strategy or else render his performance outside the "wide range" of professional competence. *See, e.g.*, *House v. United States*, 2011 WL 1429159, at *6 (N.D. Ill. April 14, 2011) (finding a five-minute attorney-client conversation before a hearing was sufficient communication because the record reflected the two discussed legal strategy and the petitioner at no point notified the court of his dissatisfaction with the attorney's communication or representation); *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 954 (7th Cir. 1986) (finding attorney was not ineffective for only meeting with defendant twice before criminal trial and noting there has been "no case establishing a minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel").

But even if he could show inadequate communication, Hartleroad makes no argument that the outcome of his jury trial would have been different had the two had more consultation time.

**c. Preparation for Trial**

Hartleroad also contends that Cosenza rendered ineffective assistance of counsel during his pretrial preparation. These claims include Cosenza's alleged failures to (1) investigate, interview, or call to testify character witnesses on Hartleroad's behalf; (2) properly prepare him for cross-examination at trial; and (3) bring to the Court's attention a speedy trial violation. He also claims that the Government denied him effective assistance of counsel by interfering with Cosenza's ability to make independent decisions about how to conduct his defense, specifically with regard to the Government's motions in limine precluding particular lines of defense.

***1. Investigating Witnesses***

Hartleroad claims that Cosenza failed to investigate his background or interview witnesses related to Hartleroad's preferred defense: establishing that he was an upstanding member of his

community with a long history of working with and around underage girls with "never even a whisper of inappropriate behavior on [his] part." (ECF No. 99 at 18). He alleges he offered to provide Cosenza with a list of names of parents and grown children who could testify about his good conduct and reputation, but that Cosenza neither considered nor presented this line of defense, nor did he interview any of those witnesses, and that such a failure was prejudicial to him.

For his part, Cosenza alleges in his affidavit that he discovered through discussions with Hartleroad's family that he had previous issues with sexual addiction and objectional sexual conduct. He further notes that he "believed if the jury became aware of these facts, it would reflect poorly on Mr. Hartleroad and could adversely affect his credibility." (ECF No. 111 at 4). The Government argues that Cosenza's decision to *not* go down the path Hartleroad requested made him *effective* counsel, given that this sort of defense "almost certainly would have opened Hartleroad up to evidence that would not have shown him in a positive light." (ECF No. 109 at 10).

Again, Hartleroad has failed to establish both *Strickland* prongs. While it's true that "[t]he failure to interview witnesses can constitute deficient performance in particular cases," *Rutledge v. United States*, 230 F.3d 1041, 1050 (7th Cir. 2000), the determination of how much pretrial investigation into witnesses is required, "like so many other decisions that an attorney must make, is a matter of professional judgment," *United States v. Ashimi*, 932 F.2d 643, 648 (7th Cir. 1991). The Constitution does not require counsel to "track down every lead or . . . personally investigate every evidentiary possibility before choosing a defense and developing it." *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987); *see also Montgomery v. Peterson*, 846 F.2d 407, 413 (7th Cir. 1988) ("Indeed, *Strickland* explicitly notes that 'when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful,' a decision not

to pursue 'those investigations may not later be challenged as unreasonable." (quoting *Strickland*, 466 U.S. at 691)).

From the outset, Hartleroad provides no evidence beyond his own conclusory allegations that Cosenza conducted no investigation and interviewed no witnesses. To the contrary, he admits in his reply that he knew of Cosenza speaking to two of his family members during trial preparation. *See* ECF No. 118 at 7. Likewise, Cosenza's own affidavit notes that he had discussions with Hartleroad's family, during which he learned concerning information about Hartleroad's sexual past. (ECF No. 111 at 4). Based on that information, Cosenza made the strategic decision to *not* pursue Hartleroad's "upstanding citizen" character defense because he believed it would open him up to potentially damaging government rebuttal evidence. This appears to be exactly the scenario imagined by *Strickland*—Cosenza was given reason to believe that pursuing those witnesses or that path would be "fruitless or even harmful," and his decision to forgo Hartleroad's requested path "may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691.

Second, even if the Court were to assume Cosenza's performance was objectively deficient, Hartleroad has utterly failed to demonstrate how he was prejudiced by the failure to investigate or call potential witnesses. To avoid the "Monday morning quarterback" scenario, "[w]hen the alleged deficiency is a failure to investigate, the movant must provide the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (internal quotation removed). Generally, that means that "the petitioner must submit an affidavit from the uncalled witness stating the testimony he or she would have given had they been called at trial." *Wright v. Gramley*, 125 F.3d 1038, 1044 (7th Cir. 1997). If he is unable to produce an affidavit,

he instead must "explain [this] absence and . . . demonstrate, with some precision, the content of the testimony [the witness] would have given at trial." *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987); *see also Ashimi*, 932 F.2d at 650 ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.").

Hartleroad has presented no such evidence. While he makes general claims about his own upstanding past, not once does indicate with any specificity what witnesses he believes Cosenza should have called. Worse still, his filing indicates that he never even provided the names of those witnesses to his own counsel. *See* ECF No. 99 at 18 ("I *offered to supply* Mr. Cosenza with a list of names of parents and now grown children that could testify to my conduct and my reputation in various situations from camping to swimming pool parties at my home." (emphasis added)). The Court need not and will not take Hartleroad at his word that these character witnesses exist and would testify to his fine moral character.

The Seventh Circuit has long held that "[a] defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *Ashimi*, 932 F.2d at 650. There is absolutely nothing in the record from which the Court could even begin to consider that Hartleroad could have been prejudiced by Cosenza's strategic choice. "Self-serving speculation" is all that Hartleroad offers, and that is simply not enough.

***2. Preparation for Cross-Examination***

Hartleroad's defense strategy—attempting to show he never believed "Candace" was a minor and that the messages with the undercover officer were merely "role play"—included his decision to take the stand in his own defense, a decision supported by his counsel. In his petition, he claims generally that Cosenza did not prepare him whatsoever to testify or for cross-

examination by the Government. He points to one exchange during the Government's cross-examination of him which he believes Cosenza should have prepared him for:

**CROSS-EXAMINATION**

**BY ATTORNEY LESLEY MILLER LOWERY:**

**Q.** Your intention is this was all role play and fantasies, right?

**A.** Yes, ma'am.

**Q.** So was the fantasy to have sex with a 14-year-old girl?

**A.** It was part of it. It was -- he had prevented --

**Q.** Yes or no? So was this fantasy to have sex with a 14-year-old girl; was that a fantasy?

**A.** As disgusting as that sounds, yes.

ECF No. 90, Trl. Tr. Vol. II, at 84. According to Hartleroad, after the case was handed to the jury, Cosenza turned to him and said, "I wish you hadn't said you had a fantasy of sex with a 14 year old." (*Id.*) Hartleroad now believes his "yes" answer—while truthful—was prejudicial, and he claims that if Cosenza "had coached [him] at all, [he] would have known to stand on the Fifth Amendment." (ECF No. 99 at 29).

As with his "failure to investigate" claim, Hartleroad provides no evidence beyond his own allegations that Cosenza failed to prepare him to testify.[4] Nor does he allege how his testimony would have changed had he been adequately informed and prepared for the Government's line of questioning, beyond his idea that he would have "stood" on the Fifth Amendment rather than

[4] The Court also notes that Hartleroad's own filings once again contradict his claims. In his Reply, he states, "I took the stand specifically because Mr. Cosenza had pointed out to me just prior to calling me to the stand that I had never said I did not believe 'Candace' to be 14." (ECF No. 118 at 11). This fact, if taken as true, establishes that Cosenza *did* prepare him to testify, even if it was just this one moment of preparation.

answering. But as the Government points out, "[i]t is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Mitchell v. United States*, 526 U.S. 314, 321 (1999); *see also United States v. Herrera-Medina*, 853 F.2d 564, 567–68 (7th Cir. 1988) ("For having decided to testify, a witness cannot assert the Fifth Amendment privilege with respect to specific questions if they are within the scope of his testimony; he cannot deprive the opposing party of the right of cross-examination."). Hartleroad's testimony on direct examination was focused on his "role play" or "fantasy" defense; the Court agrees that the Government was well within the scope of proper cross-examination to inquire about the nature and veracity of that "fantasy." That both he and his attorney did not like how the answer made him appear to the jury is immaterial to whether his counsel was constitutionally ineffective. Ultimately, even if Cosenza's failure to prepare Hartleroad for testifying and cross-examination fell below the objective performance level to which the Constitution holds counsel, he has failed to show that there is a reasonable probability that the outcome would have changed.

***3. Speedy Trial Claim***

Hartleroad belatedly amended his 2255 petition to include an additional IAC claim: Cosenza's counsel was constitutionally deficient because he failed to bring to the Court's attention that the motion to continue granted on July 19, 2021, violated his Speedy Trial rights. (ECF No. 113). He also alleges that, because there was "no written agreement" signed by him to the continuance, his Speedy Trial rights were violated. (*Id.* at 2).

On July 19, 2021, this Court conducted a hearing on Hartleroad's motion to exclude evidence that had been provided by the Government to defense counsel on the eve of trial. During that hearing, Cosenza orally moved to continue the trial for further preparation in light of the new

evidence, with the stipulation that Hartleroad be released on bond. *See* ECF No. 95 at 17. The Court made a record of the necessity for a continuance of the trial date given the new evidence and the oral motion was granted, with a written order following stating the same. (ECF No. 39).

Although the Government doesn't argue this point, as with his claim about "procedural errors" with his arrest, Hartleroad's Speedy Trial claim reeks of procedural default. A district court may consider sua sponte whether a movant has procedurally defaulted a claim unless the government has affirmatively waived the issue. *See Varela v. United States*, 481 F.3d 932, 936 (7th Cir. 2007) (affirming district court's denial of § 2255 motion on procedural default grounds not expressly raised by the government). At no point during the trial proceedings or the direct appeal process did Hartleroad ever voice an objection to the continuance or raise a Speedy Trial concern. To the extent he attempts to argue there *was* a speedy trial violation, that claim is procedurally defaulted.

As with his "procedural errors" claim, however, he has framed his claim as ineffective assistance of counsel for failing to object to the continuance and raise a Speedy Trial issue. This claim is absurd, however, given that the continuance was granted *at the request of his own counsel*. Even if Hartleroad attempted to insinuate that Cosenza did not discuss the matter with him and that the request should be attributed to counsel and not Hartleroad himself, the Seventh Circuit has recognized that "there is no requirement that counsel obtain the defendant's consent prior to making purely tactical decisions such as the decision to seek a continuance." *United States v. Hills*, 618 F.3d 619, 628 (7th Cir. 2010). Indeed, while "[t]he right to a speedy trial is certainly an important right . . . trial tactics have always been within counsel's province." *Id.* The Court heard defense counsel's oral motion to continue and articulated its reason for its decision to grant the continuance—counsel's need for additional time to adequately prepare for trial in light of new

evidence—which is sufficient to meet the Speedy Trial requirements. *See id.* ("The court articulated adequate reasons for its decision to grant the continuance, including the complexity of the case and the necessity to allow counsel adequate preparation. These were proper reasons for granting the continuance, and they suffice to meet the requirements of § 3161.").

So even if his Speedy Trial claim were not procedurally defaulted, Hartleroad has pointed to no action by Cosenza which could be seen as falling below an objective standard of reasonableness.

***4. Motions in Limine***

Hartleroad also claims that he was denied effective assistance of counsel "due to government interference in the ability of counsel to make independent decisions" through the Government's motions in limine. On July 8, 2021, the Government filed an Omnibus Motion in Limine, which included requests that the Court preclude: (a) any argument for acquittal because no minor was actually involved; (b) any reference to penalties; (c) arguments based on investigative steps not taken; (d) discussion regarding requests for discovery; and (e) attempts to define reasonable doubt, among others. The Omnibus Motion was discussed on the record during the final pretrial conference on September 14, 2021, during which Hartleroad's counsel was afforded the opportunity to argue against each motion. For the majority of the issues, Cosenza agreed that the state of the law precluded those issues or arguments, though he did make points of clarification and argue against the "investigative steps not taken" portion of the motion. *See* ECF No. 97 at 11–13). While the motion was nevertheless preliminarily granted, the record is clear that Cosenza was given adequate opportunity to contest each of the motions.

As best the Court can tell, Hartleroad is upset that he did not learn of the motions in limine until the morning of trial, so he did not know those lines of defenses were precluded. He cites

*Strickland* for the notion that the "Government violates the right to effective assistance when it interferes in certain ways with the ability to make independent decisions about how to conduct the defense." 466 U.S. at 686.

Hartleroad fundamentally misunderstands the Supreme Court's message in *Strickland*. In referencing that Government might violate the right to effective assistance of counsel by interfering with counsel's ability to make independent strategic decisions, the Court cited precedent where such interference had been found, such as *Geders v. United States*, 425 U.S. 80 (1976) (trial court cannot bar all attorney-client consultation during overnight recess), *Brooks v. Tennessee*, 406 U.S. 605 (1972) (petitioner denied constitutional rights by enforcement of rule that excluded defendant's testimony if he declined to testify first), and *Ferguson v. Georgia*, 365 U.S. 570 (1961) (statute barring defense counsel's ability to question testifying defendant through direct examination denied defendant effective assistance of counsel). Those extreme situations are not analogous here, where the Government proposed appropriate motions in limine according to the applicable law and where Hartleroad's counsel had and took the opportunity to object to and clarify those issues.

The Court cannot see how *Strickland*'s "government interference" reasoning would apply here, and Hartleroad has not shown that his counsel's performance fell below any reasonable standard of representation.

**d. Trial Decisions**

Finally, Hartleroad lobs a flurry of complaints at Cosenza's trial performance. These claims include (1) the decision to not call the confidential human source ("CHS") portraying "Candace" as a witness; (2) the failure to impeach the credibility of TFO McCarty; (3) the decision not to

investigate or present the defense of entrapment; and (4) the failure to lodge several objections during and after the trial.

***1. "Candace" as a Witness***

First, Hartleroad insists that he was prejudiced by Cosenza's decision not to call as a witness the CHS posing as "Candace" in the photos provided by TFO McCarty. (ECF No. 99 at 27). In his eyes, the failure to call her was prejudicial because "it did not allow the jury to see the obvious, that 'Candace' was being portrayed by a 22 y/o female." (*Id.*) Cosenza attests in his affidavit that he did not call the CHS as a witness because the pictures shown to the jury were enough to establish she was not a minor due to her tattoos, and her testimony would be irrelevant to the issues in the case. (ECF No. 111 at 4).

Interestingly, the CHS portraying Candace had no communication with Hartleroad. On cross-examination, TFO McCarty testified that Hartleroad never had any communication or contact with Candace and that he showed Hartleroad photos of the CHS. (ECF No. 89, Trl. Tr. Vol. I, at 215–16). Given this information, it is difficult to understand what testimony Candace could have offered that would have assisted the defense. The photos of the CHS that Hartleroad saw were shown to the jury. He has not explained how seeing her in person would have aided his case any more than having the jury see her as he saw her in the photos. As counsel points out, the fact that her tattoo was visible allowed him to argue it was obvious to Hartleroad that she was not a minor. That said, as with his earlier "failure to investigate" claim, Hartleroad's complaint here fails because he makes no argument that not calling the CHS fell outside the "wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689. There was simply not much to be gained, if anything, by calling the CHS, as she had no direct knowledge of any of the online communications between Hartleroad and TFO McCarty.

### *2. Impeaching TFO McCarty*

Hartleroad insists Cosenza rendered ineffective assistance by failing to call witnesses to impeach TFO McCarty. On the eve of trial, the Government filed a Motion in Limine seeking to prohibit any questioning regarding a one-day suspension McCarty received in 2007 for failing to appear at work, contending this incident was a mistake and did not go to McCarty's reputation for truthfulness. (ECF No. 45). Cosenza argued that questioning about the suspension should be allowed because the discipline shows that McCarty "was not truthful with the investigators regarding his failure to report for duty" and his "untruthfulness impacts his credibility as the sole prosecution's witness in the case against Mr. Hartleroad." (ECF No. 49 at 1–2). While recognizing the age of the discipline and that it may have limited relevance, the Court denied the Government's motion and allowed counsel to question TFO McCarty about the incident. (ECF No. 89, Trl. Tr. Vol. I at 16–17). On the second day of trial, the Government successfully argued to limit the scope of the impeachment evidence to permit inquiry into the fact that TFO McCarty was disciplined and for what reason, but not what discipline was administered. (ECF No. 90, Trl. Tr. Vol. II at 10–12). With those restrictions in place Cosenza did not inquire into the discipline during cross-examination of TFO McCarty.[5]

"[D]eciding what questions to ask a prosecution witness on cross-examination is a matter of strategy." *United States v. Jackson*, 546 F.3d 801, 814 (7th Cir. 2008). To show that counsel's cross-examination was deficient under the first prong of the *Strickland* test, a defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rodriguez*, 53 F.3d 1439, 1448 (7th Cir. 1995) (quotation

[5] Cosenza's affidavit attests that he addressed the discipline during cross-examination (ECF No. 111 at 4), but the Court's review of the trial transcript does not show that he went down that line of questioning.

marks omitted). And to show prejudice, the defendant must "explain[ ] . . . what [the witness's] responses to further cross-examination might have revealed" and "how those responses might have affected the result." *Id.* at 1449.

Hartleroad's claims here fail on both prongs. First, the record shows that Cosenza sought to admit the evidence of TFO McCarty's discipline, and that he was successful (although the scope was limited). *See Resnick v. United States*, 7 F.4th 611, 622 (7th Cir. 2021) (finding counsel was not ineffective when he *did* seek to admit the supposed impeachment evidence). Although the record reflects Cosenza opted not to engage in that line of questioning, Hartleroad has presented no evidence as to Cosenza's decision not to bring up this evidence on cross, so it "remains unclear whether [counsel] might have had a reason for not" pursuing that impeachment path. *United States ex rel. McCall v. O'Grady*, 908 F.2d 170, 175 (7th Cir. 1990). And "the burden of this ambiguity falls not on the [Government] but on [Hartleroad]." *Id.*

What's more, the trial record shows that Cosenza *did* engage in other avenues of questioning to impeach TFO McCarty's credibility and capacity for untruthfulness. He specifically focused on and pointed out lies TFO McCarty told Hartleroad during their online conversations. *See, e.g.*, ECF No. 90, Trl. Tr. Vol. II at 21 (between Cosenza and TFO McCarty: "Q. Clearly, in the conversation, you said you were in Columbus with her? A. Yes. Q. At this competition? A. Yes. Q. Which was not true? A. No."). Hartleroad has made no effective argument that the introduction of the evidence of TFO McCarty's discipline for missing a single day of work fourteen years prior would have in any way affected the result of his case. That Cosenza "may have missed a minor impeachment opportunity" during a trial "does not render his performance constitutionally defective. The Constitution does not guarantee a perfect trial or perfect counsel,

only a fair one with competent counsel." *Levine v. United States*, 25 F. Supp. 905, 915 (N.D. Ind. 1998) (citing *United States v. Wilson*, 134 F.3d 855, 867 (7th Cir. 1998)).

***3. Entrapment Defense***

Hartleroad argues that his attorney should have presented the defense of entrapment. He claims that, after first recounting his version of the facts to his attorney, Cosenza's initial reaction was "'entrapment,' yet he did not even mention it as a defense." (ECF No. 99 at 60). In Hartleroad's view, the evidence showed that TFO McCarty sought him out and induced him to commit the elements of the crime, and "[h]ow could a competent Attorney providing effective assistance of counsel NOT see this pattern?" (*Id.*)

The Government submits that, while Hartleroad is entitled to present a defense, that defense must be rooted in the facts of the case and the law. "A successful entrapment defense requires proof of two elements: (1) government inducement of the crime; and (2) lack of a defendant's predisposition to engage in criminal conduct." *United States v. Orr*, 622 F.3d 864, 868 (7th Cir. 2010). Given that Cosenza uncovered information related to Hartleroad's "objectional" sexual history when speaking with his family, the Government believes any "entrapment" defense would fail on the latter element, and Cosenza "was not ineffective for presenting a defense for which there was no legal basis." (ECF No. 109 at 19).

While the Court agrees that an entrapment defense would have been an uphill battle, at the least, the weakness of this claim is more fundamental—while Hartleroad may wish that his counsel used his preferred defense strategy, he has not shown that Cosenza was constitutionally ineffective for choosing not to do so. First, "[t]rial counsel is not obligated to present every conceivable theory in support of the defense." *Goins v. Lane*, 787 F.2d 248, 254 (7th Cir. 1986). And the Seventh Circuit has explained that "once defense counsel conducts a reasonable investigation into all lines

of possible defenses, counsel's strategic choice to pursue one line to the exclusion of others is rarely second-guessed on appeal. Strategic choices made after thorough investigation . . . are virtually unchallengeable." *United States v. Balzano*, 916 F.2d 1273, 1294–96 (7th Cir. 1990).

As noted earlier, Cosenza attests in his affidavit that "[t]he strategy in the case was to show that Mr. Hartleroad never believed Candace was a minor and that the sexual discussions between him and [TFO McCarty] was role play and not for the purpose of engaging in any sexually explicit conduct." (ECF No. 111 at 3). From Hartleroad's own petition, he acknowledges that Cosenza at least *considered* entrapment at their initial meeting, *see* ECF No. 99 at 60, and he has nothing beyond his conclusory allegations to establish that Cosenza failed to "conduct[ ] a reasonable investigation into all lines of possible defenses," *Balzano*, 916 F.2d at 1294. Given the lack of evidence to the contrary, Hartleroad cannot overcome the presumption that counsel "rendered adequate assistance and made all significant decision in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690; *see also Saso v. United States*, 2025 WL 2771400, at *13 (S.D. Ill. Sept. 29, 2025) ("Strategic omissions or choices which reflect reasoned judgment, even if the defendant would have preferred otherwise, are not deficient performance so long as they are based on reasonable investigation and professional standards.")

***4. Objections***

Finally, Hartleroad complains that Cosenza failed to lodge multiple possible objections over the course of the trial and post-trial proceedings. For instance, he claims Cosenza failed to object to the Government stating in its opening argument that the CHS posing as "Candace" was "an adult female who very much looked the part of a small teenage girl." (ECF No. 89, Trl. Tr. Vol. I at 117). He argues Cosenza was ineffective for failing to object to TFO McCarty's testimony that Chat Avenue "was a new platform that I was using" (*Id.* at 140) because that was an inaccurate

statement, given that the site was over 20 years old. He asserts the repeated use of the phrase "no roleplay, no fantasy" was prejudicial hearsay to which Cosenza should have objected.

The Court need not dig deep or dwell on any of these claims, however, because none have merit. Even if he had developed some kind of argument that the Government's opening statement was in some way prejudicial, there would be no basis for counsel to have objected because the Court made clear through the jury instructions that the lawyers' statements are not evidence. *See* ECF No. 55 at 5 ("The lawyers' statements and arguments are not evidence. If what a lawyer said is different from the evidence as you remember it, the evidence is what counts."). Jurors are presumed to follow the court's jury instructions, *United States v. Danford*, 435 F.3d 682, 687 (7th Cir. 2006), and the jury instructions "ameliorated any prejudice caused by the prosecutor's statements," *Wilson v. United States*, 2009 WL 972836, at *4 (N.D. Ill. Apr. 9, 2009). As to the other unspoken objections, Hartleroad has failed to explain how any of these objections had any *legal* basis, which would be necessary to show that Cosenza fell below an objective standard of reasonableness. *See United States v. Evans*, 92 F.3d 540, 544 (7th Cir. 1996) ("Criminal defense lawyers, like other lawyers, do not have an ethical duty to make groundless arguments; indeed, they have an ethical duty not to make such arguments. The refusal to act unethically by making a groundless argument can never be a ground for arguing ineffective assistance of counsel."). And he provides no more than a bare-faced claim that these failures to object caused him any sort of prejudice, giving no reasoning for how lodging an objection would have affected the outcome of his trial or sentencing.

By failing to create even a semblance of an argument as to either *Strickland* prong, Hartleroad has waived any claim based on Cosenza's alleged failures to object. *See United States v. Edwards*, 733 F. Supp. 3d 644, 647–48 (N.D. Ill. 2024) (finding the defendant who fails to

develop an argument in his motion under § 2255 waives that contention "for failure to develop it or support it with legal authority"); *see also Small v. Endicott*, 998 F.2d 411, 417 (7th Cir. 1993) ("[J]udges are not also required to construct a party's legal arguments for him.").

**e. Request for Evidentiary Hearing**

Hartleroad has requested an evidentiary hearing on his motion, but an evidentiary hearing is not warranted. It is true that ineffective assistance claims often require evidentiary hearings because they "frequently allege facts that the record does not fully disclose." *Osagiede v. United States*, 543 F.3d 399, 408 (7th Cir. 2008). But the issues raised in Hartleroad's motion can all be resolved on the existing record, which establishes Hartleroad is entitled to no relief. *See* Rule 8(a) of Rules Governing Section 2255 Proceedings; *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).

## IV. CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). Here, the Court finds that no reasonable jurist could conclude that Hartleroad is entitled to relief, so no certificate of appealability will be issued.

## CONCLUSION

For the reasons discussed, the Court DENIES Hartleroad's Motion to Vacate Sentence under 28 U.S.C. § 2255 (ECF No. 99) and his Amended Motion (ECF No. 113). The Court DENIES AS MOOT Hartleroad's Motions to Allow Discovery (ECF No. 101, 120), Motion to Amend Record (ECF No. 102), and "Motion for Summary Judgement [*sic*]" (ECF No. 121). No certificate of appealability will issue.

**SO ORDERED** this August 31, 2026.

s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT